THE STATE OF OHIO, APPELLANT, *v.* GRIFFIN, APPELLEE.

[Cite as *State v. Griffin*, 138 Ohio St.3d 108, 2013-Ohio-5481.]

*Criminal procedure—Final orders—Defective judgment entry—Resentencing entry—Waiver of three-judge panel—R.C. 2945.06—Res judicata.*

(No. 2011-0818—Submitted January 22, 2013—Decided December 19, 2013.)

APPEAL from the Court of Appeals for Coshocton County, No. 09-CA-21, 2011-Ohio-1638.

_____

KENNEDY, J.

{¶ 1} At issue in this case is whether the sentence that Sandra Griffin, appellee, has served for the past 24 years is based on a final, appealable order that gave the Fifth District Court of Appeals subject-matter jurisdiction over her direct appeal in 1990. The state of Ohio argues that res judicata bars a defendant from using a resentencing entry issued pursuant to *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, to relitigate a matter that was raised or could have been raised on direct appeal. The state further argues that in capital cases, a final, appealable order consists of a guilt-phase entry and a sentencing opinion pursuant to *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9.

{¶ 2} We recognize that this court granted the state's appeal to review the application of *Ketterer* to the final, appealable order in this case. Upon further review, we have determined that the issues presented on this appeal should be decided on different grounds. However, we are not bound by any inferences that may have been drawn from our previous decision to review this appeal on the basis of *Ketterer*. *See State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 9-12.

**{¶ 3}** Res judicata bars relitigation of a matter that was raised or could have been raised on direct appeal when a final, appealable order was issued in accordance with the law at the time. Because the sentencing entry issued in 1990 was a final, appealable order, the 2009 resentencing entry issued pursuant to *Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, was a nullity. We do not reach the state's second proposition of law regarding *Ketterer*.

**{¶ 4}** The cause is now before this court following our acceptance of the state's discretionary appeal. The state of Ohio presents two propositions of law:

> I. Res Judicata precludes a litigant from using a resentencing entry issued pursuant to *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330 [893 N.E.2d 163], to relitigate an issue when that defendant has already litigated the same issue on direct appeal.

> II. In cases in which R.C. 2929.03(F) requires the court or panel to file a sentencing opinion, a final, appealable order consists of both the sentencing opinion filed pursuant to R.C. 2929.03(F) and the judgment of conviction filed pursuant to Crim.R. 32 (C).

**{¶ 5}** We reverse the judgment of the court of appeals and remand the cause to the court of appeals with instructions to dismiss Griffin's appeal.

## CASE BACKGROUND

**{¶ 6}** On January 4, 1989, James Steurer Sr. was murdered in Coshocton County, Ohio. The next month, Griffin was indicted for complicity to commit aggravated murder with an accompanying felony-murder death-penalty specification under R.C. 2929.04(A)(7) and a firearm specification.[1]

---

1. Griffin was also indicted, convicted, and sentenced on noncapital charges not relevant here.

{¶ 7} Griffin waived her right to be tried by a jury and by a three-judge panel. In exchange, the state agreed not to pursue the death penalty, but it did not dismiss the death-penalty specification.

{¶ 8} In a trial before a single judge, Griffin was found guilty of aggravated murder and was sentenced to life imprisonment with parole eligibility in 30 years. The trial court filed two separate judgment entries. On December 21, 1989, the trial court filed a judgment entry announcing the guilt-phase findings. On January 25, 1990, a sentencing hearing was conducted. In mitigation, the defense called Dr. James Reardon, a licensed psychologist, and three other witnesses. Dr. Reardon provided comprehensive testimony about Griffin's chaotic family and marital history, mental disorders, and substance abuse. Directly thereafter, Griffin presented a short mitigation statement. After counsel's summation, the trial court permitted the presentation of victim-impact statements and allowed Griffin to allocute pursuant to Crim.R. 32. The trial court issued a sentencing entry without including the findings made on the record. A sentencing opinion pursuant to R.C. 2929.03(F) was never filed.

{¶ 9} On February 1, 1990, Griffin filed a notice of appeal that included the following assignment of error: "The trial court erred in the sentencing of the appellant by not following the mandates of R.C. 2929.03 and 2929.04, as well as allowing victim impact evidence in violation of Evid.R. 404, the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, §§ Nine, Ten, and Sixteen of the Ohio Constitution." *State v. Griffin*, 73 Ohio App.3d 546, 550-551, 597 N.E.2d 1178 (5th Dist.1992). Then, as now, R.C. 2929.03 and 2929.04 applied when "death may be imposed as a penalty for aggravated murder." Former R.C. 2929.03(D)(1), Am.Sub.S.B. No. 1, 139 Ohio Laws, Part I, 10. *See also* former R.C. 2929.03(F), *id*. at 13-14.

{¶ 10} On February 12, 1992, the court of appeals affirmed Griffin's convictions and sentences. In overruling this assignment of error, the court held:

3

> First, although this is a "capital offense," it is no longer a case within the ambit of the sentencing provisions of R.C. 2929.03 *et seq.* By pretrial agreement the appellant waived her right to jury trial in return for the agreement of the state not to request the death penalty. The case was tried to a single judge, sitting without a jury. At minimum the death penalty option was extinguished the moment appellant was placed in jeopardy in the trial.

*Id.* at 553. The court added, "The only way a defendant may be held to the death penalty is if he or she is tried to a jury or a three-judge panel. R.C. 2945.06 [three-judge court required if jury is waived and defendant is charged with offense 'punishable with death']." *Id.* at fn. 1. In other words, the court held that the capital sentencing procedures of R.C. 2929.03 and 2929.04 were not required, because the death penalty was not an option.

{¶ 11} We declined to accept Griffin's direct appeal. 64 Ohio St.3d 1428, 594 N.E.2d 970 (1992).

**COLLATERAL ATTACKS**

{¶ 12} For more than 15 years, Griffin has collaterally attacked her conviction and sentence, without success. On April 22, 1997, Griffin filed her first federal habeas corpus petition, claiming that her waiver of a trial by jury or a three-judge panel, as allowed under Ohio law, was neither knowing nor intelligent and that the trial court's failure to follow "mandatory statutory requirements of a proceeding" violated her due-process and equal-protection rights. The district court held that these arguments were procedurally defaulted because they had not been raised in state court. *Griffin v. Rogers*, S.D.Ohio No. 2:97-cv-00444 (Sept. 30, 1998).

{¶ 13} Griffin then filed a delayed application to reopen her appeal pursuant to App.R. 26(B). Griffin's application was denied, and this court declined to accept her appeal. *State v. Griffin*, 86 Ohio St.3d 1489, 716 N.E.2d 721 (1999).

{¶ 14} On October 15, 1999, Griffin filed her second petition for a federal writ of habeas corpus, claiming that her agreement to waive a three-judge panel and a jury was void. This petition was dismissed as barred by the one-year statute of limitations, 28 U.S.C. 2244(d)(1).

{¶ 15} On October 18, 2002, the United States Court of Appeals for the Sixth Circuit vacated the dismissal and remanded the case for consideration of whether Griffin was entitled to equitable tolling of the statute of limitations. *Griffin v. Rogers*, 308 F.3d 647 (6th Cir.2002). The district court held on remand that Griffin was not entitled to equitable tolling and again dismissed the habeas petition as time-barred. On March 3, 2005, the Sixth Circuit reversed, holding that the statute of limitations was equitably tolled, and remanded the case to the district court for further proceedings. *Griffin v. Rogers*, 399 F.3d 626 (6th Cir.2005).

{¶ 16} On August 22, 2006, the district court issued a final judgment dismissing Griffin's habeas petition. *Griffin v. Andrews*, S.D.Ohio No. 2:99-cv-1127, 2006 WL 2422590 (Aug. 22, 2006). On October 23, 2006, the district court denied Griffin's request for a certificate of appealability. *Griffin v. Andrews*, S.D.Ohio No. 2:99-cv-1127, 2006 WL 3041072 (Oct. 23, 2006).

{¶ 17} On August 4, 2009, Griffin filed a motion in the trial court for a final, appealable order pursuant to *Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, which construed Crim.R. 32(C) to require the judgment of conviction to be a "single document."[2] *Id.* at ¶ 1. Griffin argued that a final,

---

2. At the time of Griffin's conviction and sentence, the relevant language was set forth in former Crim.R. 32(B): "A judgment of conviction shall set forth the plea, the verdict or findings and

appealable order never issued because the trial court failed to include the court's guilt-phase findings in the original judgment entry of sentence, and therefore, *Baker*'s one-document rule was violated. The state agreed and submitted a proposed one-document judgment entry.

{¶ 18} On August 27, 2009, the trial court filed a new, one-document judgment entry and again sentenced Griffin to life imprisonment with parole eligibility after 30 years plus the 3 years for the firearm specification.

{¶ 19} Griffin appealed her convictions and sentences anew on the basis that in 1990, the appellate court had lacked subject-matter jurisdiction over her case. The court of appeals agreed, holding that Griffin's original sentence was not a final, appealable order and that the court had lacked jurisdiction to hear her original appeal. *State v. Griffin*, 5th Dist. Coshocton No. 09CA21, 2010-Ohio-3517, ¶ 25. The court reversed her convictions and remanded for a new trial, because since her trial, we had decided *State v. Parker*, 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, which held that capital sentencing provisions—including the requirement of a three-judge panel—apply unless the capital specification is dismissed. Thus, based on case law not decided at the time of the trial, the court of appeals decided that the failure to convene a three-judge panel was reversible error.

{¶ 20} On December 9, 2010, we accepted the state's appeal, vacated the judgment of the court of appeals, and remanded the case to that court for application of *Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9. *State v. Griffin*, 127 Ohio St.3d 266, 2010-Ohio-5948, 938 N.E.2d 1036. In *Ketterer*, we held, "In cases in which R.C. 2929.03(F) requires the court or panel to file a sentencing opinion, a final, appealable order consists of both the

---

sentence. * * * The judgment shall be signed by the judge and entered by the clerk." 34 Ohio St.2d lxxi (1973).

sentencing opinion filed pursuant to R.C. 2929.03(F) and the judgment of conviction filed pursuant to Crim.R. 32(C)." *Id*. at syllabus.

{¶ 21} On remand, the court of appeals held that *Ketterer*'s syllabus did not apply to Griffin because it had already held that Griffin's case was not one "in which R.C. 2929.03(F) requires the court or panel to file a sentencing opinion," *Ketterer* at syllabus. *State v. Griffin*, 5th Dist. Coshocton No. 09-CA-21, 2011-Ohio-1638, 2011 WL 1233242, ¶ 20-21. Therefore, the court reasoned, *Baker*'s one-document rule applied to Griffin. *Id.* It concluded: "Our original reversal and remand are unaffected by *Ketterer*, and are hereby reimposed." *Id*. at ¶ 32. We accepted the state's discretionary appeal.

## LEGAL ANALYSIS

### I. Final, Appealable Order

{¶ 22} The pivotal question before the court is whether 24 years ago the trial court issued a final, appealable order in Griffin's case. Ohio's statutory framework and case law at the time of Griffin's conviction and sentence did not require death-penalty procedural protections, because Griffin could not be sentenced to death. The trial court afforded Griffin all of the proper procedural protections guaranteed by law in 1990, and its sentencing entry was the final judgment in the case. Therefore, we hold that the sentencing entry issued in 1990 was a final, appealable order.

### A. THE HISTORICAL PERSPECTIVE OF THE DEATH PENALTY IN OHIO

{¶ 23} Ohio has imposed the death penalty since before it became a state. A law promulgated by the territorial governor and two judges of the territory under the Northwest Ordinance of 1787 read: "If any person or persons with malice aforethought, kill or slay another person, he, she, or they so offending, shall be deemed guilty of murder, and upon conviction thereof shall suffer the pains of death." (Promulgated Sept. 6, 1788.) Salmon P. Chase, 1 Statutes of Ohio 98 (1833). In 1831, an Ohio statute read: "Be it enacted *by the General*

*Assembly of the State of Ohio,* That if any person shall purposely, of deliberate and premeditated malice, or in the perpetration or attempt to perpetrate any rape, arson, robbery or burglary, kill another; every such person shall be deemed guilty of murder in the first degree, and upon conviction thereof, shall suffer death." 29 Ohio Laws 136.

{¶ 24} The Ohio Constitution addressed capital cases in 1851: "All persons shall be bailable by sufficient sureties, except for capital offenses where the proof is evident, or the presumption great," and "[N]o person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Ohio Constitution, Article I, former Section 9 and Section 10. "Capital offenses" was not defined. "Capital case or crime" has been traditionally defined as "[o]ne in or for which [the] death penalty may, but need not necessarily, be imposed." *Black's Law Dictionary* 209 (6th Ed.1990).

{¶ 25} From 1880 through 1898, the first-degree-murder statute changed only slightly: "Whoever purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating, or attempting to perpetrate, any rape, arson, robbery, or burglary, kills another, is guilty of murder in the first degree, and shall suffer death." R.S. 6808, 33 Ohio Laws 33.

{¶ 26} Not until 1898 did the Ohio legislature authorize a sentence for first-degree murder that was not death:

> Whoever purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating, or attempting to perpetrate, any rape, arson, robbery, or burglary, kills another, is guilty of murder in the first degree, and shall be punished by death, unless the jury trying the accused recommend mercy, in which case the punishment shall be imprisonment in the penitentiary during life.

R.S. 6808, 93 Ohio Laws 223.

{¶ 27} Then in 1933, the legislature required a three-judge panel to determine the guilt and sentencing of an accused "charged with an offense punishable with death" if the accused waived a jury. G.C. 13442-5, 115 Ohio Laws, Part I, 530, 531. Like the jury, the panel was authorized to "extend mercy and reduce the punishment for such offense to life imprisonment."

{¶ 28} In the original promulgation of the Revised Code in 1953, former R.C. 2901.01 specifically stated: "Murder in the first degree is a capital crime under Sections 9 and 10 of Article I, Ohio Constitution." Otherwise, the first-degree-murder statute was almost identical to the 1910 version: First-degree murder was killing another "purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary." The punishment remained "death unless the jury trying the accused recommends mercy, in which case the punishment shall be imprisonment for life."

{¶ 29} In 1965, the state legislature began anew a review of the procedures for the imposition of the death sentence and determined that compliance with the procedural rules must be strict. *See* Henry J. Lehman & Alan E. Norris, *Some Legislative History and Comments on Ohio's New Criminal Code,* 23 Cleve.St.L.Rev. 8 (1974). Then, beginning in 1968 with an amendment to the Ohio Constitution, this state recognized that defendants subject to death deserved special procedural protections when the Ohio Constitution for the first time gave those whose sentence of death had been affirmed on appeal the right to a second appeal, to the Supreme Court of Ohio. Ohio Constitution, Article IV, former Section 2(B)(2)(a)(ii). The General Assembly in 1972 passed a modernized act addressing the death penalty, Am.Sub.H.B. No. 511, 134 Ohio Laws, Part II, 1866, 1978-1981, which identified aggravating factors and

mitigating circumstances to consider before imposing a death sentence. Former R.C. 2929.02 through 2929.04.

{¶ 30} That act had not yet been enacted when a plurality of the justices of the United States Supreme Court stated that because the death penalty was being imposed throughout the country without any objective standards, it violated the Eighth Amendment to the United States Constitution as cruel and unusual punishment. *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Though the 1972 law attempted to avoid the arbitrary application of the death penalty that had been decried in *Furman*, the law did not survive scrutiny by the United States Supreme Court. In *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), a plurality opinion stated that Ohio's death-penalty statute did not provide individualized consideration of mitigating factors such as the defendant's prior record, character, and age, as the Eighth and Fourteenth Amendments to the United States Constitution require. *Id*. at 597-598, 606.

{¶ 31} From death being the sole authorized punishment for first-degree murder in 1788 to its being the preferred punishment tempered only by the possibility that the jury might show mercy until *Furman* in 1972, the death penalty and its limited procedural requirements were accepted as part of Ohio law. Modern society, however, was coming to believe that imposition of a death sentence required unique procedures and scrutiny.

{¶ 32} Simultaneously, the judiciary was reassessing the constitutional significance of imposing the death penalty. "The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity." *Furman,* 408 U.S. at 306, 92 S.Ct. 2726, 33 L.Ed.2d 346 (Stewart, J., concurring). Four years later, a plurality opinion added:

> [T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

*Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (opinion of Stewart, Powell, and Stevens, JJ.). The corollary conclusion is that when the death penalty is not an option, extraordinary procedural safeguards are not constitutionally necessary.

{¶ 33} During this time, no one doubted that a defendant had a final, appealable order upon sentencing. In 1976, we held, "Generally, the sentence in a criminal case is the judgment. *Miller v. Aderhold* (1933), 288 U.S. 206 [53 S.Ct. 325, 77 L.Ed. 702]; *Berman v. United States* (1937), 302 U.S. 211 [58 S.Ct. 164, 82 L.Ed. 204]; *State v. Chamberlain* (1964), 177 Ohio St. 104, 202 N.E.2d 695; *Columbus v. Stires* (1967), 9 Ohio App.2d 315, 224 N.E.2d 369." *State v. Hunt*, 47 Ohio St.2d 170, 174, 351 N.E.2d 106 (1976).

{¶ 34} In 1972, the legislature rewrote the criminal code and attempted to mesh the state law on the death penalty with the new requirements set by the United States Supreme Court. H.B. 511, 134 Ohio Laws, Part II, 1866. By its new language, the legislature distinguished a subset of capital cases in which the death penalty may be imposed, or those "punishable with death." *Id.* at 1892, R.C. 2901.02(B). The courts at first applied capital statutes to all capital offenses even if the death penalty could not be imposed. For example, after the United States Supreme Court had overturned Ohio's death-penalty statutes, Norman

Henry and a codefendant were indicted for an aggravated murder committed in 1980. Then, as now, R.C. 2945.20 required separate trials for defendants jointly indicted for a capital offense, and the murder statute stated, "Aggravated murder, and any offense for which death may be imposed as a penalty, is a capital offense." Former R.C. 2901.02(B), 134 Ohio Laws, Part II, 1866, 1892 (Jan. 1, 1974). The trial court had tried Henry and his codefendant jointly, reasoning that the law did not require capital procedures if the death penalty was not allowed. This court disagreed: "Pursuant to R.C. 2901.02(B), aggravated murder is a capital offense regardless of whether death may be imposed as a result of the conviction thereof." *State v. Henry*, 4 Ohio St.3d 44, 446 N.E.2d 436 (1983), paragraph one of the syllabus.

{¶ 35} The legislature reacted to our holding in *Henry* by amending R.C. 2901.02(B) to delete aggravated murder without death specifications from being classified as a capital offense. 1984 Am.H.B. No. 380, 140 Ohio Laws, Part II, 3639. This court interpreted the change in dicta as follows:

> Subsequent to our decision in *Henry* and during the pendency of this appeal, R.C. 2901.02(B) was amended effective April 4, 1984 so that only an offense for which death may be imposed as a penalty is a capital offense. As a result, special protections are afforded to those facing the possibility of the death penalty, but now the criminal justice system is relieved of the burden and expense of such venire where those charged do not face the possibility of the death penalty.

*State ex rel. Corrigan v. McMonagle*, 12 Ohio St.3d 15, 16, 465 N.E.2d 382 (1984), fn. 1.

**{¶ 36}** After *Corrigan*, courts of appeals began to consider whether specialized death-penalty procedures applied when a capital offense was charged, but death could not be imposed. For example, R.C. 2945.06 was viewed to distinguish between capital cases in which the death penalty was an option and those in which it was not. It states:

> In any case in which a defendant waives his right to trial by jury and elects to be tried by the court under section 2945.05 of the Revised Code, any judge of the court in which the cause is pending shall proceed to hear, try, and determine the cause in accordance with the rules and in like manner as if the cause were being tried before a jury. *If the accused is charged with an offense punishable with death*, he shall be tried by a court to be composed of three judges * * *.

(Emphasis added.)

**{¶ 37}** Trial courts and courts of appeals interpreted *Corrigan* to require capital procedures only when death could be imposed:

> As the Supreme Court recognized in *State v. Henry, supra*, an offense may be classified as a capital offense even though the death penalty may not be imposed. The General Assembly has used both the term capital offense and an offense punishable with death and we must assume that the General Assembly intended that there be a distinction between the two terms. The statute, which is a different statute than the Supreme Court considered in *Henry*, is clear and unambiguous. It stated that a person who violated the section shall be punished by death. The question in *Henry* was

whether, under R.C. 2901.02(B), a crime which was designated as a capital offense and punishable by death was still a capital offense after the Ohio death penalty was invalidated by the United States Supreme Court. That is not the question in this case. It appears obvious that the General Assembly intended that a three-judge panel should be provided to a defendant accused of an offense for which his life may be taken. Since the death penalty was not in effect in Ohio at the time defendant allegedly committed the crime, the General Assembly's purpose in providing a three-judge panel where a person's life is at stake would not have been served by providing him a three-judge panel.

*State v. Hubert*, 10th Dist. Franklin No. 82AP-942, 1984 WL 5871 (Aug. 16, 1984).

{¶ 38} This court observed that capital cases and those in which the death penalty could be imposed were not the same thing. "[C]apital offenses may continue independent of the death penalty." *State ex rel. Johnson v. Shoemaker*, 6 Ohio St.3d 215, 216, 451 N.E.2d 1231 (1983). In other words, the possibility of the death penalty controls whether capital sentencing procedural protections are required, not whether the case is labeled a capital case.

{¶ 39} Juvenile cases presented the same legal issues. Though not yet required to do so by the United States Supreme Court, the 1981 Ohio death-penalty law excluded those under 18 at the time of the offense from being subject to the death penalty. R.C. 2929.03(E), 139 Ohio Laws Part I, 13. Courts relied on *Corrigan* to deny juveniles who were charged with a capital offense death-penalty procedural protections because death could not be imposed. *State ex rel. Fyffe v. Evans*, 5th Dist. Coshocton No. 90–CA–4, 1990 WL 52518 (Apr. 11, 1990) (pursuant to *Corrigan*, an indigent juvenile offender being tried as an adult

for a capital offense was properly denied the appointment of two lawyers because the death penalty could not be imposed), *aff'd on other grounds*, 62 Ohio St.3d 62, 577 N.E.2d 1094 (1991); and *State v. Cohen*, 11th Dist. Lake No. 12–011, 1988 WL 41545, *12 (Apr. 29, 1988) (by the language of R.C. 2945.06 [three-judge-panel requirement], juvenile was properly denied trial before three judges because "the death penalty could not be imposed against him as a matter of law").

### B. 1990 SENTENCING PROCEDURES FOR CAPITAL OFFENSES
### WHEN DEATH CANNOT BE IMPOSED

{¶ 40} Statutes and case law closed the questions of whether adult and juvenile offenders were required to be tried before a three-judge panel and whether the appointment of two lawyers was required when a capital offense was charged but the death penalty could not be imposed. The question that remained open was whether the sentencing procedural protections afforded in former R.C. 2929.03(D) and (F) were required when a capital offense was charged but the offender could not be put to death. *Griffin*, 73 Ohio App.3d 546, 597 N.E.2d 1178, settled that question of law.

{¶ 41} Griffin waived her right to be tried by a three-judge panel or by a jury in exchange for the state's agreement not to pursue a death sentence. Griffin was consequently tried before a single judge, and a guilt-phase entry was issued. During the sentencing phase, Griffin was permitted to offer mitigation evidence and to allocute. Griffin was therefore afforded all required due process. The trial court then entered findings on the record and issued a sentencing entry that was a final, appealable order in accordance with *Hunt*, 47 Ohio St.2d at 174, 351 N.E.2d 106, which stated, "Generally, the sentence in a criminal case is the judgment." Griffin, the prosecution, and the courts all recognized the sentencing entry as final and appealable.

{¶ 42} The Fifth District Court of Appeals applied the reasoning in the three-judge-panel and capital juvenile cases in considering Griffin's sentencing

challenge. Former R.C. 2929.03(D) and (F) addressed the sentencing requirements that applied "when death may be imposed," and the appellate court decided that they did not apply to Griffin because "the death penalty option was extinguished the moment appellant was placed in jeopardy in the trial." *Griffin*, 73 Ohio App.3d at 553, 597 N.E.2d 1178. The statutory provisions in effect at the time of the offenses provided:

> (D)(1) * * * *When death may be imposed as a penalty for aggravated murder, the court shall proceed under this division.* * * * The court, and the trial jury if the offender was tried by a jury, shall consider any report [presentence investigation] prepared pursuant to this division and furnished to it and any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender. * * *
> * * *
> (3) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, *if applicable*, the reports submitted to the court *pursuant to division (D)(1) of this section* [requiring

compliance if "death may be imposed"], if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. Absent such a finding by the court or panel, the court or the panel shall impose one of the following sentences on the offender:

(a) Life imprisonment with parole eligibility after serving twenty full years of imprisonment;

(b) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.

* * *

(F) The court or the panel of three judges, *when it imposes sentence of death*, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. *The court or panel, when it imposes life imprisonment under division (D) of this section,* shall state in a separate opinion its specific findings of which of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found

guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. The court or panel shall file the opinion required to be prepared by this division with the clerk of the appropriate court of appeals and with the clerk of the supreme court within fifteen days after the court or panel imposed sentence. The judgment in a case in which a sentencing hearing is held *pursuant to this section* is not final until the opinion is filed.

(Emphasis added.) Former R.C. 2929.03, 139 Ohio Laws, Part I, 10-14.

{¶ 43} The Fifth District Court of Appeals ruled consistently with courts that had interpreted language similar to that in former R.C. 2929.03 delineating procedures "when death may be imposed." It held:

[A]lthough this is a "capital offense," it is no longer a case within the ambit of the sentencing provisions of R.C. 2929.03 *et seq*. By pretrial agreement the appellant waived her right to jury trial in return for the agreement of the state not to request the death penalty. The case was tried to a single judge, sitting without a jury. At minimum the death penalty option was extinguished the moment appellant was placed in jeopardy in the trial.

*Griffin,* 73 Ohio App.3d at 553, 597 N.E.2d 1178.

{¶ 44} Therefore, when Griffin appealed, Ohio law provided that special procedural protections associated with a capital offense were required only when the death penalty could be imposed. The Fifth District Court of Appeals reasonably followed the other courts in this state in holding that R.C. 2929.03(D) and (F) also apply only when the death sentence is an option. *Id.* at 553. This

18

court then denied discretionary review. 64 Ohio St.3d 1428, 594 N.E.2d 970 (1992).

{¶ 45} The Fifth District Court of Appeals was not alone in concluding that death-penalty procedures applied only when death could be imposed, and this court continued to deny review over defendants' challenges. *State v. Heddleson*, 5th Dist. Stark No. 99-CA-00074, 1999 WL 770845 (Sept. 7, 1999), *discretionary appeal not accepted*, 87 Ohio St.3d 1476, 721 N.E.2d 121 (1999); *State v. Steele*, 10th Dist. Franklin No. 00AP-499, 2001 WL 721806 (June 28, 2001), *discretionary appeal not accepted*, 93 Ohio St.3d 1459, 756 N.E.2d 1235 (2001); *State v. Ahart*, 7th Dist. Mahoning No. 93 C.A. 211, 2001 WL 1155786, *2 (Sept. 28, 2001), *discretionary appeal not accepted*, 94 Ohio St.3d 1452, 762 N.E.2d 370 (2002).

{¶ 46} The court of appeals correctly assumed based on the law at the time that the trial court's sentencing entry was a final order. Therefore, the court of appeals had subject-matter jurisdiction to review Griffin's assignments of error. That this law may have changed a decade or more later does not justify our abandoning the law in place and the convictions based on it at the time of trial. In 2005, the Sixth Circuit Court of Appeals made the same point in rejecting a claim of ineffective assistance of counsel made by convicted murderer Elmer Ahart:

> *State v. Griffin*, 73 Ohio App.3d 546, 597 N.E.2d 1178, 1183 (1992), established that when a defendant agreed to forgo his right to a jury trial in exchange for the prosecution's agreement not to pursue the death penalty, the case could be heard by a single judge. *Griffin* was not overruled until the Ohio Supreme Court issued its decision in *State v. Parker*, 95 Ohio St.3d 524, 769 N.E.2d 846 (2002). Thus, at the time Ahart would have appealed his sentence, the law did not require that his case be heard by a

three-judge panel. The fact that the law may have changed in 2002 does not mean that Ahart had a nonfrivolous ground for appeal in 1993.

*Ahart v. Bradshaw*, 122 Fed.Appx. 188, 194 (6th Cir.2005).

**{¶ 47}** We reaffirm that Griffin was afforded all procedural protections required by law in 1990 and that a final judgment was entered. Therefore, the order that she appealed from in 1990 was final and appealable. The finality of her conviction and sentence is consistent with "society's interest in enforcing the law, and in meting out the punishment the legislature has deemed just." *State v. Beasley*, 14 Ohio St.3d 74, 75, 471 N.E.2d 774 (1984). Even if in 1992 the court of appeals was wrong in assuming that a final, appealable order existed in 1990, its holding was subject to res judicata principles and therefore could have been challenged only in a direct appeal. Consequently, Griffin is precluded from reopening her appeal by res judicata, "a rule of fundamental and substantial justice." *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 25.

## II. Res Judicata Bars Griffin's Successive
## and Collateral Challenges

**{¶ 48}** Because the 1990 sentencing entry was a final, appealable order, Griffin's claims are barred by res judicata.

> Under the doctrine of *res judicata*, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). Both Griffin and defense counsel believed that the sentencing entry was a final, appealable order, because Griffin filed her direct appeal on February 1, 1990.

**{¶ 49}** On that direct appeal, Griffin's assignments of error included the claim that "[t]he trial court erred in the sentencing of the appellant by not following the mandates of R.C. 2929.03 and 2929.04 * * *." *Griffin*, 73 Ohio App.3d at 550-551, 597 N.E.2d 1178. Griffin never challenged the lack of a Crim.R. 32(B) entry or the lack of a three-judge panel, and therefore, these claims are forever barred. We consequently adopt the first proposition of law: the sentencing entry issued in 1990 was a final, appealable order, and the 2009 resentencing entry issued pursuant to *Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, was a nullity. Res judicata precludes a litigant from using a resentencing entry issued pursuant to *Baker* to litigate an issue when that defendant has already litigated or could have litigated the issue on direct appeal.

**{¶ 50}** Our holding regarding the state's first proposition of law resolves the current appeal, and we therefore do not address the state's second proposition of law.

## CONCLUSION

**{¶ 51}** We therefore hold that Sandra Griffin had a final, appealable order when the trial court issued the sentencing entry in 1990. We further hold that res judicata precludes a litigant from using a resentencing entry issued pursuant to *Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, to litigate an issue that defendant has already litigated or could have litigated on direct appeal.

**{¶ 52}** Our holding today emphasizes the importance of final judgments:

" '[P]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of

the contest, and that matters once tried shall be considered forever settled as between the parties.' * * * We have stressed that '[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts.' "

*State v. Szefcyk*, 77 Ohio St.3d 93, 95, 671 N.E.2d 233 (1996), quoting *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), quoting *Baldwin v. Traveling Men's Assn.,* 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931), and *Hart Steel Co. v. RR. Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917).

{¶ 53} We reverse the judgment of the court of appeals and remand the cause to the court of appeals with instructions to dismiss Griffin's appeal.

Judgment reversed

and cause remanded.

PFEIFER, O'DONNELL, and FRENCH, JJ., concur.

O'CONNOR, C.J., and LANZINGER and O'NEILL, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 54} I respectfully dissent. The majority opinion correctly states that the pivotal question before the court is whether the trial court issued a final, appealable order in Griffin's case. Majority opinion, ¶ 22. But instead of deciding whether *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, applies, as the Fifth District Court of Appeals held, or whether *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, applies, as the state argues, the majority refuses to apply either because the cases had not been

decided by 1990. I would hold that there was no final, appealable order upon which an appeal could be taken pursuant to *Ketterer* because a sentencing opinion has never been filed as required by R.C. 2929.03. I would vacate the judgment entry of conviction for aggravated murder[3] and remand this case to the trial court.

{¶ 55} Sandra Griffin has served 24 years of a life sentence that permits parole eligibility after 30 years. She was convicted of aiding and abetting two others in the aggravated murder of James Steurer Sr. and was also convicted of the capital specification under R.C. 2929.04(A)(7) and a firearm specification under R.C. 2941.141. The state had agreed not to seek the death penalty against Griffin but never dismissed the felony-murder specification within her indictment. Therefore, she has always been charged with the capital offense of aggravated murder. Yet the capital-case statutes were not followed, and the appellate court erred in exercising jurisdiction.

### I. "Capital Case" Defined

{¶ 56} Since April 3, 1984, R.C. 2901.02(B) has plainly defined a capital case in terms of the *charged* offense:

> Aggravated murder when the indictment or the count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of [the] Revised Code, and any other offense for which death may be imposed as a penalty, is a capital offense.

---

3. Griffin's noncapital convictions for aiding and abetting unlawful possession of dangerous ordnance, aiding and abetting grand theft, aiding and abetting aggravated robbery, and a firearm specification are unaffected and therefore are irrelevant to this discussion.

Am.H.B. No. 380, 140 Ohio Laws, Part II, 3639. In addressing an earlier version of this statute,[4] this court stated, "Pursuant to R.C. 2901.02(B), aggravated murder is a capital offense regardless of whether death may be imposed as a result of the conviction thereof." *State v. Henry*, 4 Ohio St.3d 44, 446 N.E.2d 436 (1983), paragraph one of the syllabus. We have continued to hold that it does not matter if the death penalty will not be imposed. *State v. Harwell*, 102 Ohio St.3d 128, 2004-Ohio-2149, 807 N.E.2d 330 (juvenile charged with aggravated murder and a capital specification, although ineligible for a death sentence due to age, is still entitled to protections of capital procedure); *State v. Clinkscale*, 122 Ohio St.3d 351, 2009-Ohio-2746, 911 N.E.2d 862, ¶ 11 (the case remains a capital case even though the defendant could not receive a death sentence in a second trial). An indictment must be amended to remove the death-penalty specification, so that the defendant is no longer "charged" with an offense punishable by death, for a case to become noncapital. *State ex rel. Henry v. McMonagle*, 87 Ohio St.3d 543, 544-545, 721 N.E.2d 1051 (2000).

{¶ 57} Griffin's indictment charged her with a capital offense— aggravated murder in violation of R.C. 2903.01(A) and the felony-murder specification under R.C. 2929.04(A)(7). When she waived a jury trial, the state did not amend the indictment to dismiss the specification. Therefore, Griffin's case remained a capital case.

{¶ 58} We have already squarely addressed this issue:

> A defendant charged with a crime punishable by death who has waived his right to trial by jury must, pursuant to R.C. 2945.06 and Crim.R. 11(C)(3), have his case heard and decided by a three-judge panel even if the state agrees that it will not seek the death penalty.

---

4. H.B. No. 511, 134 Ohio Laws, Part II, 1892.

*State v. Parker*, 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, syllabus.[5] Parker waived his right to a trial by jury, waived his right to a three-judge panel, and pled guilty to aggravated murder with a death specification. He was sentenced by a single judge to life imprisonment with parole eligibility after 20 years. The court of appeals vacated the guilty plea and conviction and remanded the case for further proceedings. We affirmed, holding that regardless of the state's agreement not to seek the death penalty, Parker "was still *charged* with an offense that was punishable with death." (Emphasis sic.) *Id.* at ¶ 11.[6]

## II. Capital Procedures

**{¶ 59}** When a defendant is convicted of both an aggravated-murder charge and a specification, the potential penalties include death as well as a term of life imprisonment. R.C. 2929.03(C)(2)(a). The penalty is to be determined by "the panel of three judges that tried the offender upon the offender's waiver of the right to trial by jury" in accordance with R.C. 2929.03(D) and (E). R.C. 2929.03(C)(2)(b)(i). Furthermore, after the mitigation hearing, required by R.C. 2929.03(D), the panel must fully consider the choices, choosing death only if they are unanimous, otherwise selecting one of the possible life terms.[7] R.C. 2929.03(D)(3).

---

5. We accepted the appeal in *Parker* as in conflict with *State v. Griffin*, 73 Ohio App.3d 546, 597 N.E.2d 1178 (1992). *Id*. at ¶ 3. Not until April 1, 2011, did the court of appeals apply *Parker*'s holding to Griffin's case. 2011-Ohio-1638,¶ 32.

6. Although we also stated in *Parker* that the three-judge-panel requirement of R.C. 2945.06 was a jurisdictional matter that cannot be waived, 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, ¶ 12, we modified that statement in a subsequent case by holding that the failure to convene a three-judge panel does not create a lack of subject-matter jurisdiction that renders the trial court's judgment void ab initio and subject to collateral attack in habeas corpus. *Pratts v. Hurl*ey, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, syllabus. Instead, we held the error to be an error in the exercise of jurisdiction, correctable by appeal. *Id.*

7. At the time of Griffin's crimes, former R.C. 2929.03(D)(3) provided that the possible life terms that could be imposed were life imprisonment with parole eligibility after 20 or 30 full years of

**{¶ 60}** In a capital case, a final, appealable order does not exist until the sentencing opinion is filed. *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9. R.C. 2929.03(F) sets forth requirements for the sentencing opinion in all capital cases, whether death or a life sentence is imposed. At the time of Griffin's trial, the statute stated:

> The court *or the panel of three judges*, *when it imposes sentence of death, shall state in a separate opinion its specific findings* as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. *The court or panel, when it imposes life imprisonment under division (D) of this section*, s*hall state in a separate opinion its specific findings* of which of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. \* \* \* *The judgment* in a case in which a sentencing hearing is held pursuant to this section *is not final until the opinion is filed.*

---

imprisonment. Am.Sub.S.B. No. 1, 139 Ohio Laws, Part I, 1, 13. The current statute allows life terms with parole eligibility after 25 or 30 years or life imprisonment without parole. R.C. 2929.03(D)(3)(a).

(Emphasis added.) Am.Sub.S.B. No. 1, 139 Ohio Laws, Part I, 1, 13-14.

{¶ 61} These statutes show that the General Assembly intended to create a specific procedure that would be followed in capital cases. And we have consistently required strict compliance with Ohio statutes when we have reviewed the procedures in capital cases. *State v. Filiaggi*, 86 Ohio St.3d 230, 240, 714 N.E.2d 867 (1999).

### III. Compliance with Capital Statutes Is Required
### Even If Death May Not Be Imposed

{¶ 62} The majority opinion contradicts our precedent by declaring that "the possibility of the death penalty controls whether capital sentencing procedural protections are required, not whether the case is labeled a capital case." Majority opinion, ¶ 38. The majority states on this point:

> Ohio's statutory framework and case law at the time of Griffin's conviction and sentence did not require death-penalty procedural protections, because Griffin could not be sentenced to death. The trial court afforded Griffin all of the proper procedural protections guaranteed by law in 1990, and its sentencing entry was the final judgment in the case.

Majority opinion at ¶ 22.

{¶ 63} But the three appellate court decisions relied on by the majority hardly closed the matter of whether capital procedures were required in capital cases for which life sentences were to be imposed. *See State v. Hubert*, 10th Dist. Franklin No. 82AP-942, 1984 WL 5871 (Aug. 16, 1984); *State ex rel. Fyffe v. Evans*, 5th Dist. Coshocton No. 90-CA-4, 1990 WL 52518 (Apr. 11, 1990); *State v. Cohen*, 11th Dist. Lake No. 12-011, 1988 WL 41545, *12 (Apr. 29, 1988).

These cases were decided before this court had weighed in. When we did address these issues, we required trial courts to strictly follow capital procedures regardless of whether death could be imposed. For instance, in *Parker,* we held that a defendant who waives a jury trial must have the case heard and decided by a three-judge panel even if the state agrees that it will not seek the death penalty. 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, syllabus. We also held that juveniles charged with aggravated murder and a capital specification are still entitled to the protections of capital procedure, although they are ineligible for death sentences due to their age. *Harwell*, 102 Ohio St.3d 128, 2004-Ohio-2149, 807 N.E.2d 330.

{¶ 64} The majority unjustifiably refuses to acknowledge this court's more recent decisions and unduly limits the review of cases to those decided by 1990. The general rule in Ohio is that a court decision applies retrospectively unless a party has contract rights or vested rights under a prior decision. *Peerless Elec. Co. v. Bowers*, 164 Ohio St. 209, 129 N.E.2d 467 (1955); *see also State v. Bey*, 85 Ohio St.3d 487, 503, 709 N.E.2d 484 (1999). Therefore, as long as the statutory provisions are similar, our subsequent decisions are relevant to whether the trial court was required to follow capital procedures when Griffin was sentenced and whether she had a final, appealable order.

{¶ 65} *Parker*, although not announced until after Griffin's trial, was decided under the same version of R.C. 2945.06 that had been in effect since 1981. The portion of the statute relevant to Griffin states:

> If the accused is charged with an offense punishable with death, he shall be tried by a court to be composed of three judges * * *. The judges or a majority of them may decide all questions of fact and law arising upon the trial; however the accused shall not be found guilty or not guilty of any offense unless the judges unanimously

28

> find the accused guilty or not guilty. * * * *The court shall follow*
> *the procedures* contained in sections 2929.03 and 2929.04 of the
> Revised Code in all cases in which the accused is *charged* with an
> offense punishable by death.

(Emphasis added.) Just as in *Parker*, Griffin was "charged with an offense punishable by death" because her indictment included the R.C. 2929.04(A)(7) specification. R.C. 2945.06 mandated that capital sentencing procedures in R.C. 2929.03 be applied because she was charged with a capital offense. The state's agreement that it would not seek the death penalty did not alter this requirement.[8]

{¶ 66} With respect to Griffin's appeal, a panel of three judges did not issue the sentencing opinion required by R.C. 2929.03(F) because the death specification remained. A single judge had convicted her of aggravated murder and found her guilty of the death specification. While stating erroneously that this was not a capital case, that single judge then heard considerable mitigation evidence at sentencing. But no sentencing opinion under R.C. 2929.03(F) was ever filed. Consequently, this is a pending case, for a final, appealable order does not yet exist.

{¶ 67} It is axiomatic that courts of appeals have no jurisdiction to act without final, appealable orders. *State ex rel. Bates v. Court of Appeals for the Sixth Appellate Dist.*, 130 Ohio St.3d 326, 2011-Ohio-5456, 958 N.E.2d 162, ¶ 12. Article IV, Section 3(B)(2) of the Ohio Constitution confers jurisdiction upon the courts of appeals to "review and affirm, modify, or reverse" lower courts' "judgments or final orders." Because the judgment in a capital case is not

---

8. The trial court also should have followed the capital trial procedures. Thus Griffin's decision to waive a jury meant that her guilt or nonguilt should have been determined by three judges unanimously, R.C. 2945.06, and that those judges should have imposed sentence if she was found guilty, R.C. 2929.03(D)(3). Although it is true that structural error does not apply to statutory violations, it could be argued that Griffin was denied her constitutional right to due process because of the numerous procedural errors in this case.

final until the sentencing opinion is filed pursuant to R.C. 2929.03(F), Griffin's appeal was never finalized, and res judicata cannot apply.

{¶ 68} The court of appeals decided incorrectly that *Baker* rather than *Ketterer* applied, reasoning that a sentencing opinion was unnecessary because there was no mitigation hearing under R.C. 2929.03(D). 2011-Ohio-1638 at ¶ 19-21. This misses the point. A mitigation hearing was required because the version of R.C. 2945.06 in effect at the time of Griffin's sentencing required the trial court to follow the procedures in R.C. 2929.03 "in all cases in which the accused is *charged with* an offense punishable by death." (Emphasis added.) As we stated in *Harwell*, "we looked principally to the offense charged, which was punishable by death, and not to the status of the defendant or the fact that death had been eliminated as an option." 102 Ohio St.3d 128, 2004-Ohio-2149, 807 N.E.2d 330, ¶ 12.

{¶ 69} There is no denying that Griffin was charged with a capital offense. Contrary to the majority, I believe that this fact alone does control whether a trial court is required to follow capital trial and sentencing procedures. Because a sentencing opinion is required in a capital case, Griffin has never had a final, appealable order.

## IV. Conclusion

{¶ 70} What must be acknowledged is that the court of appeals never had the power to act when no final, appealable order existed in this case because a sentencing opinion was not filed pursuant to R.C. 2929.03(F). The majority attempts to whitewash the numerous procedural errors in this capital case by unduly limiting its review to case law as it existed in 1990. Because this court has held that capital procedures must be followed even when the death penalty is not an option in a capital case, I would affirm the court of appeals' decision to the extent that it vacates the conviction for aggravated murder and the felony-murder specification and remand this case to the trial court for further proceedings.

O'Connor, C.J., and O'Neill, J., concur in the foregoing opinion.

_____

Jason W. Given, Coshocton County Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellee.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, urging reversal for amicus curiae, Ohio Prosecuting Attorneys Association.

_____