[Cite as *State v. Picard*, 2014-Ohio-2924.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| JOHN S. PICARD | : | Case No. 13CA95 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Richland County
Court of Common Pleas, Case No.
2008 CR 545 and 2009 CR 111

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      June 27, 2014

APPEARANCES:

For Plaintiff-Appellee                                   For Defendant-Appellant

JAMES J. MAYER, JR.                                 JAMES L. BLUNT, II
Prosecuting Attorney                                 445 West Longview Avenue
                                                     Mansfield, OH 44903
By: JILL M. COCHRAN
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH 44902

*Baldwin, J.*

{¶1}    Appellant John S. Picard appeals a judgment of the Richland County Common Pleas Court resentencing him following this Court's judgment vacating convictions of five counts of sexual battery.  Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2}    In 1990, appellant was hired as the youth pastor at the Marion Avenue Grace Brethren Church in Mansfield, Ohio. In his position at the church, appellant and his wife Sherry had regular contact with teenage girls and young adult females in the church.

{¶3}    Appellant formed close relationships with several of the girls in the youth group, distancing these girls from their family and friends. He referred to this smaller group as "the family," which was made up of appellant and his wife, several of the girls in the youth group, and eventually the girls' husbands as the girls grew older and married. As the leader, appellant controlled nearly every aspect of their lives. Appellant influenced where the girls lived, who they dated or married, and what cars they purchased. Appellant spoke of having a large piece of land where the "family" could live in a large house with separate wings, sharing a common kitchen and dining area.

{¶4}    H.G. began attending the Marion Avenue Church when she was twelve years old and moved in with her great aunt and uncle after her parents died. She began babysitting appellant's children when she was sixteen. When she was sixteen, she and appellant began kissing and fondling. One night, after eating dinner with appellant's family, H.G. went to the basement with appellant to spot him while he was working out. Appellant had H.G. perform oral sex on him. Appellant explained to H.G. that it wasn't

sinful because it wasn't sex. On another occasion, appellant and H.G. were in the bedroom of appellant's home naked. Appellant digitally penetrated H .G.'s vagina, but appellant's son walked in before the encounter could go any further. H.G. left the area when she turned eighteen, but saw appellant one last time thereafter. Appellant drove her out into the country where they kissed and fondled each other, and H.G. performed oral sex on appellant.

{¶5}    S.S. began attending Marion Avenue Church in her sophomore year of high school. Her mother had divorced for a second time and she had to move in with her father. While involved with the youth group, S.S. would run errands with appellant. On one occasion they went for a motorcycle ride. Appellant reached between S.S.'s legs, claiming he was switching to an alternate gas tank. Like H.G., S.S. babysat appellant's children. On one occasion, appellant asked S.S. to stop at his house after a New Year's Eve party. When she arrived, the house was dark. Appellant took her into the bedroom, kissed her, pulled down her pants and touched her genital area. He asked her to say, "Fuck me." Tr. 215. She became afraid because she had never seen appellant behave in such a harsh manner. She ultimately said what he asked her to say, although no penetration occurred. On Sundays after church appellant began taking S.S. by the hand and leading her to his office, where they would kiss and stroke each other. Appellant told her that being a youth pastor was difficult and he was frequently under attack, and this was a form of comfort his wife could not give him.

{¶6}    During the summer of 2004, S.S. accompanied the youth group on a mission trip. While taking the garbage to the dumpster with appellant, he unzipped his pants and guided her head to his penis, asking her to put his penis in her mouth. He

instructed her to perform oral sex on him in the back of a truck at a later time on the same mission trip. He told S.S. that this was something his wife could not do for him.

{¶7} S.W. was an only child from what she considered a normal family. However, as she became more involved with appellant and Sherry through the youth group, her relationship with her parents deteriorated. In the fall of 1995, appellant asked S.W. to kiss him. By 1996, S.W. considered appellant to be her best friend. Appellant told her that best friends engage in sexual acts with each other, claiming that the Bible states that Jonathan and David were best friends who engaged in sexual behavior together. He also told S.W. that when the Bible says a pastor should be a one woman man that just means he can't be with two women at the same time. He explained to her that his job was very taxing, and he needed her to fill him back up. Around 1996 or 1997, he asked S.W. to perform oral sex on him in the kitchen of his home. For the next ten years, she regularly engaged in oral sex and sexual intercourse with appellant. He told her it would be a worse sin for her not to have sex with him than it would be to have sex with him, because God was protecting their relationship. Sometimes when S.W. did not want to have sex with appellant she cried, and appellant told her he liked it when she cried.

{¶8} G.R. attended the youth group at the Marion Avenue Church. She had been sexually abused by her father. G.R. also babysat for appellant and Sherry. When G.R. was 13 and appellant was driving her home after babysitting, he pulled into a wooded area and asked her to perform oral sex on him. Appellant told her that he believed God put her in his life for this special relationship because there were things Sherry could not do for him. Appellant and G.R. began engaging in oral sex and sexual

intercourse on a weekly basis when she babysat for his children. Sometimes in his office in the church he would place her on his lap, rub her breasts and her genital area, and have her rub his genitals. During a game of hide and seek at a youth group overnighter at the church, appellant found G.R. hiding in the baptismal. He had G.R. perform oral sex on him in the baptismal. He told G.R. that he had consulted the Holy Spirit and had received peace that his relationship with G.R. was right. He told her that giving him oral sex was her God-given role as his comforter.

{¶9}    J.F. is G.R.'s step-sister. Between the ages of 18 and 20, she began giving appellant oral sex in his office and in a storage room at the church. In April of 1999, when J.F. was 20 years old, she began engaging in sexual intercourse with appellant. After she moved into her own apartment in October, 2001, she and appellant engaged in sex once or twice a week. Appellant told her if she didn't have sex with him, he would terminate their friendship and she would be shunned by the church. Appellant hit J.F. at times, and threatened to tie her up if she did not comply with his request for sex. Appellant told her that she was a special friend who had been chosen for him. He explained to her that their relationship was not different from those in the Bible, including Jonathan and David. He told her that in the Biblical account of the Last Supper where John leans on Jesus, it is possible that John had contact with Jesus' genitals. He also recounted the story, where Abraham places his hand on another man's thigh to make an oath, to support his claims that his relationship with J.F. was Biblically sanctioned.

{¶10}   L.R. was 14 years old when she began attending the church with a friend. She admired and trusted appellant and thought of him more highly as a spiritual leader

than anyone she had ever met. She longed to be a part of the group that was close to appellant and his wife. On one occasion when she was on the church bus alone with appellant, he told her that he thought she was very godly, and if anything happened to Sherry, L.R. is the kind of woman he would want for his wife. In 2004, L.R. asked to meet with appellant to learn how to memorize Scripture. When she went to appellant's office, he told her that things were hard and he needed comfort. He then placed L.R.'s hands on his genitals, telling her that his wife is not a comfort to him and L.R. is the only one he could trust. When decorating for a wedding shower at the church, appellant pulled L.R. into his office and asked her for oral sex. She refused. However, in September of 2004 appellant convinced L.R. to perform oral sex on him. Eventually the oral sex progressed into sexual intercourse, and the sexual behavior continued regularly through December of 2007. He explained that this was not adultery, telling L.R., "You were given to me by God. You were made just for me." Tr. 635.

{¶11} In 2005, H.G. disclosed her involvement with appellant to a pastor at her new church. This pastor in turn relayed the allegations to the Marion Avenue church, and H.G. was called before a council of pastors. H.G.'s claims were discounted by the church, but the church held a series of meetings about whether to retain appellant as youth pastor. His other victims attended these meetings, either standing in full support of appellant or remaining silent. Many members of the church had become concerned about appellant's close relationships with young women in the congregation, with one member referring to the group as appellant's "harem." Tr. 229.

{¶12} Although the congregation voted to retain appellant, he resigned from the church and made plans to form his own church with members of his "family." These

plans fell apart in January of 2005 when S.S. confessed her relationship with appellant to her husband.

{¶13} Initially, police were not concerned with relationships between appellant and the girls after they turned 18, believing them to be consensual relationships between adults. Appellant was initially indicted in Case No. 08–CR–545 for sexual battery against H.G. and G.R. when they were juveniles. After the nature of the control and mental and spiritual coercion appellant exerted over the girls became apparent to police, the State moved to amend the indictment to include offenses against H.G. and G.R. after they turned 18, and to amend the statutory subsection in counts nine through sixteen, which related to H.G., to allege a violation of R.C. 2907.03(A)(1) rather than a violation of R.C. 2907.03(A)(9) because subsection (A)(9) was not in effect during the time period alleged in these counts.

{¶14} Appellant was later indicted in 09–CR–111 for sexual battery against S.W., L.R., J.F. and S.S. The cases were consolidated for trial.

{¶15} The case proceeded to jury trial in the Richland County Common Pleas Court. Following trial, appellant was convicted of all charges and sentenced to an aggregate term of 40 years in prison, with 5 years mandatory post-release control. This Court affirmed the judgment on appeal. *State v. Picard,* 5th Dist. Richland No. 2009CA0108, 2010-Ohio- 6358.

{¶16} Appellant filed a motion to reopen his appeal, arguing that counsel was ineffective for failing to raise a claim of insufficient evidence as to six of the eight counts of sexual battery against H.G. We granted the motion to reopen, and upon reopening found the evidence sufficient to support three of the eight counts of sexual battery

against H.G.  We reversed the convictions on the remaining five counts and remanded to the trial court for resentencing.  *State v. Picard,* 5th Dist. Richland No. 2009CA0108, 2011-Ohio- 6781.

{¶17}  On remand, the court dismissed counts twelve through sixteen of the indictment, and resentenced appellant on counts nine through eleven.  Appellant was sentenced to five years incarceration on Count 9, to run consecutive to counts 1, 5, and 10 and to counts 1, 9, 17 and 19 of Case No. 09-CR-111.  He was sentenced to five years incarceration on Count 10, to run consecutive to counts 1, 5 and 9, and to counts 1, 9, 17 and 19 of Case No. 09-CR-111.  On Count 11 he was sentenced to one year, to run concurrent to all other charges.

{¶18}  Appellant assigns two errors to this Court on appeal of his resentencing:

{¶19}  "I.    WHETHER THE TRIAL COURT VIOLATED THE DEFENDANT'S DUE PROCESS RIGHTS BY RE-SENTENCING AND VACATING THE CHARGES ON REMAND THAT THE TRIAL COURT RAN CONCURRENT WHERE IT WAS UNCLEAR WHICH COUNTS THAT THE APPEALS COURT VACATED.

{¶20}  "II.   WHETHER THE TRIAL COURT ERRED BY RE-SENTENCING THE DEFENDANT TO THE SAME TERM WHERE THE APPELLATE COURT VACATED FIVE COUNTS OF SEXUAL BATTERY."

I.

{¶21}  Appellant argues that the court erred in vacating the convictions on counts 12-16, where the sentences had been ordered to run concurrently.  Appellant argues that it was unclear which counts were vacated by this Court, and the trial court should have allowed him to elect which counts to vacate.

{¶22}    All eight charges of sexual battery related to H.G. were indicted identically, as follows:

{¶23}    "COUNT IX through Count XVI:  JOHN S. PICARD . . . on or between the 26th day of October, 1991 and the 30th day of November, 1993, at the County of Richland, did engage in sexual conduct with another, not the spouse of the offender, the offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution, in violation of section 2907.03(A)(1) of the Ohio Revised Code, a felony of the third degree."

{¶24}    Similarly, the Bill of Particulars grouped all eight counts together in which H.G. was the victim.  The verdict forms also used the language of the indictment and are identical on all eight counts.

{¶25}    In our 2011 opinion following the reopening of the appeal, this Court found that H.G.'s testimony supported convictions on only three counts, as she testified to only three incidents of sexual conduct with appellant.  We therefore reversed on five counts and remanded for resentencing.   Appellant is correct that this Court's prior opinion did not specify which counts to vacate; however, due to the manner in which the case was indicted and tried, it was not possible or necessary to tie the reversals specifically to the counts of the indictment in which H.G. was the victim because all counts related to H.G. were identical.

{¶26}    Further, after a reversal and remand for resentencing, a greater or lesser sentence could result.  *State v. Mitchell*, 6th Dist. Erie No. E-11-039, 2012-Ohio-5262, ¶10, citing *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072 (1969).  Because we remanded for resentencing, the court could have elected to sentence appellant to

five years consecutive on two of the counts and one year concurrent on the remaining count regardless of which of the identical counts the court chose to vacate. The court conducted a resentencing hearing in which appellant addressed the court concerning his time in prison, counsel for appellant spoke concerning appellant's exemplary record in prison, and appellant's mother spoke on his behalf. The fact that appellant received the same aggregate sentence on resentencing was not related to the court's decision to vacate counts twelve to sixteen.

{¶27}   The first assignment of error is overruled.

II.

{¶28}   In his second assignment of error, appellant argues that the court erred in resentencing him to the same term despite vacating five counts. Appellant argues that pursuant to R.C. 2929.11 and R.C. 2929.12, the seriousness of his crime was substantially decreased when five counts were vacated, yet his aggregate term of incarceration remained the same.

{¶29}   The trial court sentenced appellant to five years incarceration on count nine and five years on count ten, to be served consecutively. The court sentenced appellant to one year incarceration on count eleven, to be served concurrently. Appellant's aggregate sentence was forty years both before and after resentencing.

{¶30}   The Supreme Court of Ohio in *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, set forth a two step process for examining felony sentences. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Id.* at ¶ 4. If this first step is

satisfied, the second step requires that the trial court's decision be reviewed under an abuse of discretion standard. *Id.* An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.* at ¶ 19.

{¶31}   R.C. 2929.11 sets forth the purposes of felony sentencing:

{¶32}   "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

{¶33}   "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

{¶34}   "(C) A court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender."

{¶35}   R.C. 2929.12 sets forth the factors the court is to consider in felony sentencing:

{¶36}    "(A) Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

{¶37}    "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

{¶38}    "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

{¶39}    "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

{¶40}    "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

{¶41}    "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

{¶42}   "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

{¶43}   "(6) The offender's relationship with the victim facilitated the offense.

{¶44}   "(7) The offender committed the offense for hire or as a part of an organized criminal activity.

{¶45}   "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

{¶46}   "(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

{¶47}   "(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:

{¶48}   "(1) The victim induced or facilitated the offense.

{¶49}   "(2) In committing the offense, the offender acted under strong provocation.

{¶50}   "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

{¶51} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

{¶52} "(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

{¶53} "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.

{¶54} "(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.

{¶55} "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

{¶56} "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has

demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

{¶57} "(5) The offender shows no genuine remorse for the offense.

{¶58} "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

{¶59} "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

{¶60} "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

{¶61} "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

{¶62} "(4) The offense was committed under circumstances not likely to recur.

{¶63} "(5) The offender shows genuine remorse for the offense."

{¶64} Although five counts were vacated, appellant remained convicted of 37 counts of sexual battery in which the victims were young girls he met through his job as a youth pastor at the church they attended. Three counts remained in which H.G. was the victim. She testified that she began attending the Marion Avenue Church when she was twelve years old and moved in with her great aunt and uncle after her parents died. She began babysitting appellant's children when she was sixteen. When she was sixteen, she and appellant began kissing and fondling. One night, after eating dinner with appellant's family, H.G. went to the basement with appellant to spot him while he was working out. Appellant had H.G. perform oral sex on him. Appellant explained to

H.G. that it wasn't sinful because it wasn't sex. On another occasion, appellant and H.G. were in the bedroom of appellant's home naked. Appellant digitally penetrated H.G.'s vagina, but appellant's son walked in before the encounter could go any further. H.G. left the area when she turned eighteen, but saw appellant one last time thereafter. Appellant drove her out into the country where they kissed and fondled each other, and H.G. performed oral sex on appellant.

{¶65} The evidence reflects that appellant used his position as youth pastor at the church and the relationship he had with H.G. and the other girls resulting from his position in their church to manipulate them into sexual activity. The court stated at the resentencing hearing:

{¶66} "Mainly, he's here for being a bad steward of the charges he assumed when he became a youth minister and assumed authority over young people. A high calling, and he failed. Some, maybe all of us, have failed from time to time. The prosecutor has pointed out that this wasn't just a one-time situation where a person got overwrought and did something that was illegal, sinful, wrong. This was [sic] occasions when this gentleman misused and abused his position of trust at a time when these young girls, young women, needed someone of strength and good character to provide them with a basis for living the rest of their lives. And in some ways, as I think everyone acknowledges, they were damaged to the core; that all their life, they're going to realize that they were tricked and fooled and mistreated and abused. What they'll make with that, I don't know, but nor do they know. But they've been damaged substantially." Tr. 26.

{¶67}  Further, appellant had an opportunity to speak at the resentencing hearing, and did not demonstrate genuine remorse for his actions.  Instead, he spoke about how difficult prison had been for him and how extreme and painful the five years he had served in prison had been.  Tr. 20-22.

{¶68}  The trial court did not abuse its discretion in sentencing appellant to five years incarceration on counts nine and ten, to be served consecutively, even though the aggregate term of his sentence remained unaffected by the dismissal of five counts.

{¶69}  The second assignment of error is overruled.  The judgment of the Richland County Common Pleas Court is affirmed.  Costs are assessed to appellant.

By: Baldwin, J.

Gwin, P.J. and

Farmer, J. concur.