[Cite as *State v. Picard*, **2017-Ohio-7600.**]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 17 CA 28 |
| | : | |
| JOHN S. PICARD | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Richland County Court
                                  of Common Pleas, Case Nos. 2008-CR-
                                  0545, 2009-CR-0111

JUDGMENT:                         AFFIRMED

DATE OF JUDGMENT ENTRY:           September 11, 2017

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

GARY BISHOP                                JOHN S. PICARD, Pro Se
RICHLAND COUNTY PROSECUTOR                 Inmate No. A572767
                                           Belmont Correctional Institution
JOSEPH C. SNYDER                           68518 Bannok Uniontown Rd.
38 South Park Street                       St. Clairsville, OH 43950
Mansfield, OH 44902

*Delaney, P.J.*

{¶1}   Defendant-Appellant John S. Picard appeals the February 28, 2017 nunc pro tunc sentencing entry of the Richland County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   The facts as set forth in appellant's previous appeals are as follows:

{¶3}   In 1990, appellant was hired as the youth pastor at the Marion Avenue Grace Brethren Church in Mansfield, Ohio. In his position at the church, appellant and his wife Sherry had regular contact with teenage girls and young adult females in the church.

{¶4}   Appellant formed close relationships with several of the girls in the youth group, distancing these girls from their family and friends. He referred to this smaller group as "the family," which was made up of appellant and his wife, several of the girls in the youth group, and eventually the girls' husbands as the girls grew older and married. As the leader, appellant controlled nearly every aspect of their lives. Appellant influenced where the girls lived, who they dated or married, and what cars they purchased. Appellant spoke of having a large piece of land where the "family" could live in a large house with separate wings, sharing a common kitchen and dining area.

{¶5}   H.G. began attending the Marion Avenue Church when she was twelve years old and moved in with her great aunt and uncle after her parents died. She began babysitting appellant's children when she was sixteen. When she was sixteen, she and appellant began kissing and fondling. One night, after eating dinner with appellant's family, H.G. went to the basement with appellant to spot him while he was working out. Appellant had H.G. perform oral sex on him. Appellant explained to H.G. that it wasn't sinful because it wasn't sex. On another occasion, appellant and H.G. were naked in the

bedroom of appellant's home. Appellant digitally penetrated H.G.'s vagina, but appellant's son walked in before the encounter could go any further. H.G. left the area when she turned eighteen, but saw appellant one last time thereafter. Appellant drove her out into the country where they kissed and fondled each other, and H.G. performed oral sex on appellant.

{¶6} S.S. began attending Marion Avenue Church in her sophomore year of high school. Her mother had divorced for a second time, and she had to move in with her father. While involved with the youth group, S.S. would run errands with appellant. On one occasion they went for a motorcycle ride. Appellant reached between S.S.'s legs, claiming he was switching to an alternate gas tank. Like H.G., S.S. babysat appellant's children. On one occasion, appellant asked S.S. to stop at his house after a New Year's Eve party. When she arrived, the house was dark. Appellant took her into the bedroom, kissed her, pulled down her pants and touched her genital area. He asked her to say, "Fuck me." Tr. 215. She became afraid because she had never seen appellant behave in such a harsh manner. She ultimately said what he asked her to say, although no penetration occurred. On Sundays after church appellant began taking S.S. by the hand and leading her to his office, where they would kiss and stroke each other. Appellant told her that being a youth pastor was difficult and he was frequently under attack, and this was a form of comfort his wife could not give him.

{¶7} During the summer of 2004, S.S. accompanied the youth group on a mission trip. While taking the garbage to the dumpster with appellant, he unzipped his pants and guided her head to his penis, asking her to put his penis in her mouth. He

instructed her to perform oral sex on him in the back of a truck at a later time on the same mission trip. He told S.S. that this was something his wife could not do for him.

{¶8}   S.W. was an only child from what she considered a normal family. However, as she became more involved with appellant and Sherry through the youth group, her relationship with her parents deteriorated. In the fall of 1995, appellant asked S.W. to kiss him. By 1996, S.W. considered appellant to be her best friend. Appellant told her that best friends engage in sexual acts with each other, claiming that the Bible states that Jonathan and David were best friends who engaged in sexual behavior together. He also told S .W. that when the Bible says a pastor should be a one-woman man, that just means he can't be with two women at the same time. He explained to her that his job was very taxing, and he needed her to fill him back up. Around 1996 or 1997, he asked S.W. to perform oral sex on him in the kitchen of his home. For the next ten years, she regularly engaged in oral sex and sexual intercourse with appellant. He told her it would be a worse sin for her not to have sex with him than it would be to have sex with him, because God was protecting their relationship. Sometimes when S.W. did not want to have sex with appellant she cried, and appellant told her he liked it when she cried.

{¶9}   G.R. attended the youth group at the Marion Avenue Church. She had been sexually abused by her father. G.R. also babysat for appellant and Sherry. When G.R. was 13 and appellant was driving her home after babysitting, he pulled into a wooded area and asked her to perform oral sex on him. Appellant told her that he believed God put her in his life for this special relationship because there were things Sherry could not do for him. Appellant and G.R. began engaging in oral sex and sexual intercourse on a weekly basis when she babysat for his children. Sometimes in his office in the church he

would place her on his lap, rub her breasts and her genital area, and have her rub his genitals. During a game of hide and seek at a youth group overnighter at the church, appellant found G.R. hiding in the baptismal. He had G.R. perform oral sex on him in the baptismal. He told G.R. that he had consulted the Holy Spirit and had received peace that his relationship with G.R. was right. He told her that giving him oral sex was her God-given role as his comforter.

{¶10} J.F. is G.R.'s step-sister. Between the ages of 18 and 20, she began giving appellant oral sex in his office and in a storage room at the church. In April of 1999, when J.F. was 20 years old, she began engaging in sexual intercourse with appellant. After she moved into her own apartment in October, 2001, she and appellant engaged in sex once or twice a week. Appellant told her if she didn't have sex with him, he would terminate their friendship and she would be shunned by the church. Appellant hit J.F. at times, and threatened to tie her up if she did not comply with his request for sex. Appellant told her that she was a special friend who had been chosen for him. He explained to her that their relationship was not different from those in the Bible, including Jonathan and David. He told her that in the Biblical account of the Last Supper where John leans on Jesus, it is possible that John had contact with Jesus' genitals. He also recounted the story, where Abraham places his hand on another man's thigh to make an oath, to support his claims that his relationship with J.F. was Biblically sanctioned.

{¶11} L.R. was 14 years old when she began attending the church with a friend. She admired and trusted appellant and thought of him more highly as a spiritual leader than anyone she had ever met. She longed to be a part of the group that was close to appellant and his wife. On one occasion when she was on the church bus alone with

appellant, he told her that he thought she was very godly, and if anything happened to Sherry, L.R. is the kind of woman he would want for his wife. In 2004, L.R. asked to meet with appellant to learn how to memorize Scripture. When she went to appellant's office, he told her that things were hard and he needed comfort. He then placed L.R.'s hands on his genitals, telling her that his wife is not a comfort to him, and L.R. is the only one he could trust. When decorating for a wedding shower at the church, appellant pulled L.R. into his office and asked her for oral sex. She refused. However, in September of 2004 appellant convinced L.R. to perform oral sex on him. Eventually the oral sex progressed into sexual intercourse, and the sexual behavior continued regularly through December of 2007. He explained that this was not adultery, telling L.R., "You were given to me by God. You were made just for me." Tr. 635.

{¶12} In 2005, H.G. disclosed her involvement with appellant to a pastor at her new church. This pastor in turn relayed the allegations to the Marion Avenue church, and H.G. was called before a council of pastors. H.G.'s claims were discounted by the church, but the church held a series of meetings about whether to retain appellant as youth pastor. His other victims attended these meetings, either standing in full support of appellant or remaining silent. Many members of the church had become concerned about appellant's close relationships with young women in the congregation, with one member referring to the group as appellant's "harem." Tr. 229.

{¶13} Although the congregation voted to retain appellant, he resigned from the church and made plans to form his own church with members of his "family." These plans fell apart in January of 2005 when S.S. confessed her relationship with appellant to her husband.

{¶14} Initially, police were not concerned with relationships between appellant and the girls after they turned 18, believing them to be consensual relationships between adults. Appellant was initially indicted in Case No. 08–CR–545 for sexual battery against H.G. and G.R. when they were juveniles. After the nature of the control and mental and spiritual coercion appellant exerted over the girls became apparent to police, the State moved to amend the indictment to include offenses against H.G. and G.R. after they turned 18, and to amend the statutory subsection in counts nine through sixteen, which related to H.G., to allege a violation of R.C. 2907.03(A)(1) rather than a violation of R.C. 2907.03(A)(9) because subsection (A)(9) was not in effect during the time period alleged in these counts.

{¶15} Appellant was later indicted in Case No. 09–CR–111 for sexual battery against S.W., L.R., J.F. and S.S. The cases were consolidated for trial.

{¶16} The case proceeded to a jury trial in the Richland County Common Pleas Court. Following trial, appellant was convicted of all charges and sentenced to an aggregate term of 40 years in prison, with 5 years mandatory post-release control. This Court affirmed the judgment on appeal. *State v. Picard*, 5th Dist. Richland No. 2009CA0108, 2010–Ohio–6358 ("*Picard I*").

{¶17} Appellant filed a motion to reopen his appeal, arguing that counsel was ineffective for failing to raise a claim of insufficient evidence as to six of the eight counts of sexual battery against H.G. We granted the motion to reopen, and upon reopening found the evidence sufficient to support three of the eight counts of sexual battery against H.G. We reversed the convictions on the remaining five counts and remanded to the trial

court for resentencing. *State v. Picard*, 5th Dist. Richland No. 2009CA0108, 2011–Ohio–6781 ("*Picard II*").

{¶18} On remand, the trial court dismissed counts twelve through sixteen of the indictment, and resentenced appellant on counts nine through eleven. Appellant was sentenced to five years incarceration on Count 9, to run consecutive to counts 1, 5, and 10 and to counts 1, 9, 17 and 19 of Case No. 09–CR–111. He was sentenced to five years incarceration on Count 10, to run consecutive to counts 1, 5 and 9, and to counts 1, 9, 17 and 19 of Case No. 09–CR–111. On Count 11 he was sentenced to one year, to run concurrent to all other charges.

{¶19} Appellant again appealed to this Court. By Opinion and Entry dated June 27, 2014, this Court affirmed the trial court's sentencing decision. *State v. Picard*, 5th Dist. Richland No. 13CA95, 2014-Ohio-2924 ("*Picard III*").

{¶20} On September 2, 2014, appellant filed a motion for a delayed appeal in the Ohio Supreme Court. The Ohio Supreme Court denied his motion on October 22, 2014.

{¶21} On June 4, 2014, appellant filed a motion entitled Ex Parte Motion to Proceed to Judgment and Order, thereafter, to Vacate the Void Judgment With Prejudice. In said motion, appellant moved the trial court to rule on the August, 2009, speedy trial motion. The State responded, arguing that the motion was barred by res judicata. On July 16, 2014, the trial court overruled the motion, finding it to be an untimely motion for post conviction relief (by almost five years) and barred by res judicata.

{¶22} Appellant appealed the trial court's judgment entry. In *State v. Picard*, 5th Dist. Richland No. 14 CA 65, 2015-Ohio-431 ("*Picard IV*"), we affirmed the trial court's decision that appellant's claims were barred by res judicata.

{¶23} On April 29, 2015, appellant filed Complaint for Writ of Mandamus and/or Procedendo requesting an order to require the trial court issue a new sentencing entry so it would be contained in one document. The trial court originally issued separate sentencing entries for Case No. 08-CR-545 and 09-CR-111. The sentencing entry in Case No. 09-CR-111 ordered appellant to pay restitution to the victims for counseling as submitted to the Richland County Clerk of Courts. The trial court issued two separate restitution orders to represent restitution owed to separate victims in Case No. 09-CR-111. The restitution orders, however, contained both case numbers.

{¶24} On May 18, 2015, the State filed a motion for a corrective nunc pro tunc entry to remove the restitution from Case No. 08-CR-545 and docket restitution in only Case No. 09-CR-111. The State requested the trial court issue nunc pro tunc judgment entries to correct the restitution orders to reflect only Case No. 09-CR-111. On May 18, 2015, the trial court granted the State's motion for corrective order.

{¶25} On March 14, 2016, this Court granted the writ of mandamus. Pursuant to *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, and Crim.R. 32(C), we found the trial court did not issue a final, appealable order because it had not issued one single judgment entry containing the entire sentencing along with the other requirements of Crim.R. 32. *State ex rel. Picard v. Robinson*, 5th Dist. Richland No. 15CA38, 2016-Ohio-1044 ("*Picard V*"). We remanded the matter to the trial court to correct the sentencing entry. *Id.* at ¶ 12.

{¶26} On May 16, 2016, appellant filed a motion to invoke speedy sentencing and direct appeal rights.

{¶27} On February 28, 2017, the trial court issued a nunc pro tunc sentencing entry in Case No. 09-CR-111.

{¶28} On March 13, 2017, appellant filed a motion for reconsideration of sentencing revision. Appellant argued the trial court should have been present in court for resentencing. Appellant also argued the sentences for Case Nos. 08-CR-545 and 09-CR-111 should have been in one sentencing entry.

{¶29} On March 27, 2017, appellant filed a notice of appeal of the February 28, 2017 nunc pro tunc sentencing entry.

{¶30} On March 30, 2017, the trial court overruled appellant's motion for reconsideration of sentencing revision.

### ASSIGNMENTS OF ERROR

{¶31} Picard raises ten Assignments of Error:

{¶32} I. THE TRIAL COURT ERRED IN SENTENCING DEFENDANT-APPELLANT OUTSIDE OF HIS PRESENCE VIOLATING CRIM.R. 43(A) AND HIS 14TH AMENDMENT OF THE U.S. CONSTITUTION AS WELL AS ARTICLE I SECTION 10 OF OHIO'S CONSTITUTION RIGHTS.

{¶33} "II. THE TRIAL COURT ERRED WHEN DEFENDANT-APPELLANT WAS NOT BROUGHT TO TRIAL WITHIN THE SPEEDY TRIAL TIME FRAME CAUSING PREJUDICE AND VIOLATING R.C. 2945.71 AND HIS 6TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION AS WELL AS ARTICLE I, SECTIONS 10 AND 16 OF OHIO'S CONSTITUTION RIGHTS.

{¶34} "III. THE TRIAL COURT ERRED IN PROSECUTING, CONVICTING AND SENTENCING WITHOUT SUBJECT-MATTER JURISDICTION, INDICTMENT COUNTS

17 AND 19 (09 CR 111); VIOLATING DEFENDANT-APPELLANT'S 6TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION AS WELL AS ARTICLE I, SECTIONS 10 AND 16 OF OHIO'S CONSTITUTION RIGHTS.

{¶35} "IV. THE TRIAL COURT ERRED IN PROSECUTING, CONVICTING AND SENTENCING FOR 5 COUNTS (08 CR 545) WITH INSUFFICIENT EVIDENCE; VIOLATING DEFENDANT-APPELLANT'S 5TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION AS WELL ARE ARTICLE I, SECTIONS 10 AND 16 OF OHIO'S CONSTITUTION RIGHTS.

{¶36} "V. THE TRIAL COURT ERRED BY PROSECUTING, CONVICTING, AND SENTENCING FOR 17 COUNTS (09 CR 111) WITH INSUFFICIENT EVIDENCE; VIOLATING DEFENDANT-APPELLANT'S 5TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION AS WELL AS ARTICLE I, SECTIONS 10 AND 16 OF OHIO'S CONSTITUTION RIGHTS.

{¶37} "VI. THE TRIAL COURT ERRED IN SENTENCING FOR CRIMES ARISING OUT OF THE SAME CONDUCT AND ARE ALLIED OFFENSES (09 CR 111), VIOLATING R.C. 2941.25(A) AND DEFENDANT-APPELLANT'S DOUBLE JEOPARDY, 5TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION AS WELL AS ARTICLE I, SECTION 10 OF OHIO'S CONSTITUTION RIGHTS.

{¶38} "VII. THE TRIAL COURT ERRED IN PROSECUTING, CONVICTING AND SENTENCING FOR CRIMES IN WHICH WRONGFULLY AMENDED INDICTMENTS INCLUDED DATES OUTSIDE OF THE DATES FILED IN THE ORIGINAL TRUE BILL INDICTMENTS RETURNED BY THE GRAND JURY, COUNTS 1-5 AND 9-16 (08 CR 545) AS WELL AS COUNTS 17 AND 18 (09 CR 111), VIOLATING CRIM.R. 7(D), AND

DEFENDANT-APPELLANT'S 14TH AMENDMENT OF THE U.S. CONSTITUTION AS WELL AS ARTICLE I, SECTION 10 OF OHIO'S CONSTITUTION RIGHTS.

{¶39} "VIII. THE DEFENDANT-APPELLANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL, WHEN DEFENSE COUNSEL'S REPRESENTATION FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS VIOLATING HIS 6TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION AS WELL AS ARTICLE I, SECTION 10 OF OHIO'S CONSTITUTION RIGHTS.

{¶40} "IX. THE TRIAL COURT ERRED BY DENYING DEFENDANT-APPELLANT A FAIR TRIAL, WHEN ENOUGH PREJUDICE, IN CUMULATIVE EFFECT, DENIED HIM FUNDAMENTAL FAIRNESS; VIOLATING HIS 14TH AMENDMENT OF THE U.S. CONSTITUTION AS WELL AS ARTICLE I, SECTION 10 OF OHIO'S CONSTITUTION RIGHTS.

{¶41} "X. THE TRIAL COURT ERRED BY THE IMPOSITION OF COURT COSTS WITHOUT THE OPPORTUNITY TO CHALLENGE THE BILLING. THE DUPLICATIVE AND ERRONEOUS CHARGES VIOLATE DEFENDANT-APPELLANT'S 14TH AMENDMENT OF THE U.S. CONSTITUTION AS WELL AS ARTICLE I, SECTION 10 OF OHIO'S CONSTITUTION RIGHTS."

**ANALYSIS**

**I. *Baker* and Resentencing**

{¶42} Appellant argues in his first Assignment of Error that the trial court erred when it issued a nunc pro tunc sentencing entry outside his presence. Appellant contends the trial court was required to hold a resentencing hearing with appellant present because the issue of restitution was never determined in open court.

{¶43} The Ohio Supreme Court "has consistently regarded Crim.R. 32(C) errors as clerical mistakes subject to nunc pro tunc corrections." *State ex rel. Snead v. Ferenc*, 138 Ohio St.3d 136, 2014-Ohio-43, 4 N.E.3d 1013. In *State ex rel. DeWine v. Burge*, 128 Ohio St.3d 236, 2011-Ohio-235, 943 N.E.2d 535, ¶ 18, the Supreme Court held the remedy for correcting a sentencing entry that does not comply with Crim.R. 32(C) is to issue a corrected sentencing entry rather than conduct a new sentencing hearing. In *Burge*, the Court explained the remedy was logical because the trial court and the parties all proceeded under the presumption that the sentencing entry for the defendant constituted a final appealable order and any failure to comply with Crim.R. 32(C) was a mere oversight vesting the trial court with specific and limited jurisdiction to issue a new sentencing entry to reflect what the court had previously ruled. The trial court was not to issue a new sentencing entry reflecting what, in a judge's successive opinion, the trial court should have ruled. *Id*. at ¶ 19; see also *State v. Bonnell*, 8th Dist. Cuyahoga No. 96368, 2011-Ohio-5837 (finding the remedy for a technical violation of Crim.R. 32(C) is not to have the trial court issue a final appealable order so the defendant can again appeal his conviction, but is a corrected sentencing entry).

{¶44} This is consistent with our ruling in *Picard V*. In *Picard V*, we granted a writ of mandamus to order the trial court to correct appellant's sentencing entry pursuant to Crim.R. 32(C). In its appellate brief, the State expressed concern that appellant already obtained appellate review of his conviction and sentence. *Picard V, supra* at ¶ 13. We responded, "[t]he Ohio Supreme Court concluded that [a] defendant [is] entitled to a *new sentencing entry* irrespective of prior appellate review, because the original sentencing entry did not constitute a final appealable order. *Id*. at ¶ 10-11, 895 N.E.2d 805."

(Emphasis added.) *Id.* at ¶ 13 citing *State ex rel. Moore v. Krichbaum*, 7th Dist. Mahoning No. 09 MA 201, 2010-Ohio-1541, ¶ 13.

{¶45} Appellant contends the issue of restitution was not discussed in open court. Appellant was originally sentenced on September 3, 2009. The trial court ordered appellant to pay restitution as part of his sentence. The trial court stated, "You will be required to pay court costs or the court costs will be your responsibility, including the victims [sic] expenses, some of which have been set out in a statement of fact and restitution and have been signed by you and by the court today." (Tr. VI, 989). Appellant signed both restitution statements at the time of his sentencing.

{¶46} The trial court properly corrected the *Baker* violation found in *Picard V* with a nunc pro tunc sentencing entry. We find appellant's argument that he was entitled to a new sentencing hearing is unsupported by the law and the record.

{¶47} Appellant's first Assignment of Error is overruled.

## II. – X.

{¶48} In appellant's second through tenth Assignments of Errors, appellant raises arguments made in *Picard I*, *Picard II*, *Picard III*, and *Picard IV*. He also raises new arguments.

{¶49} This court has held where a trial court issues a corrected judgment entry to comply with Crim.R. 32, a defendant who has already had the benefit of a direct appeal cannot raise any and all claims of error in successive appeals. *State v. Horn*, 5th Dist. Delaware No. 13 CAA 12 0087, 2014-Ohio-1814. We stated in *State v. Harris*, 5th Dist. Richland No. 10-CA-49, 2011-Ohio-1626, that where an appellant attempts to re-litigate multiple claims from his original conviction and raise new claims, "we do not find this to

be the intent of the Supreme Court in *Baker*." In such circumstances, res judicata remains applicable and the defendant is not entitled to a second bite at the apple. *Horn, supra* at ¶ 11 citing *State v. Bonnell, supra*. A nunc pro tunc entry issued solely for the purpose of complying with Crim.R. 32 applies retrospectively to the judgment it corrects and is not a new final appealable order. *State v. Miley*, 5th Dist. Richland No. 2011 CA 0005, 2011-Ohio-5647; *State v. Griffin*, 138 Ohio St.3d 108, 2013-Ohio-5481, 4 N.E.3d 989, ¶ 49 (holding res judicata precludes a litigant from using a resentencing entry issued pursuant to *Baker* to litigate an issue when that defendant has already litigated or could have litigated the issue on direct appeal).

{¶50} The trial court originally sentenced appellant in 2009. Appellant filed a direct appeal of his conviction and raised seven assignments of error. As to appellant's sentence, appellant only argued the trial court erred in convicting and sentencing him on duplicative counts. The court exercised jurisdiction over his appeal and affirmed his conviction and sentence. Appellant successfully reopened his appeal based on ineffective assistance of counsel. He raised two assignments of error arguing there was insufficient evidence to convict appellant of multiple counts of sexual battery. We found the record supported convictions on only three counts of sexual battery and remanded the matter to the trial court for resentencing. Appellant appealed the resentencing. We affirmed. Appellant appealed and raised six assignments of error arguing the trial court's denial of appellant's petition for post-conviction relief was in error. We affirmed. Appellant filed a writ of mandamus regarding the sentencing entries, which we granted.

{¶51} The record in this case shows appellant has had a full opportunity to litigate all issues relating to his conviction and sentence, and his substantive rights were not

prejudiced in any way. We find appellant's arguments are barred by the doctrine of res judicata.

{¶52} Appellant's second through tenth Assignments of Errors are overruled.

## CONCLUSION

{¶53} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Gwin, J. and

Hoffman, J., concur.